# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CLAUDINE QUINN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| MICHAEL PAULEY, THELMA | ) | 04 C 6581 |
| CASAREZ, CAROL ZURISK, | ) | |
| ELIZABETH BRADFORD, and | ) | |
| UNIDENTIFIED CHICAGO HEIGHTS | ) | |
| POLICE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Claudine Quinn has sued Defendant Michael Pauley, an officer with the Chicago Heights Police Department, as well as Thelma Casarez, Carol Zurisk, Elizabeth Bradford, and unidentified Chicago Heights police officers alleging a violation of the Voting Rights Act of 1965, 42 U.S.C. § 1973 (Count I), false arrest (Count II) and excessive force (Count III) in violation of 42 U.S.C. § 1983, and malicious prosecution in violation of state law (Count IV). Pauley has moved for summary judgment solely as to the claim for false arrest, arguing that he is entitled to qualified immunity and that probable cause existed for the arrest. In addition, Pauley has moved to strike certain portions of Quinn's responses to his motion for summary judgment.[1] For the reasons stated in this Memorandum Opinion and Order, Pauley's motion is granted.

---

[1] The Court denies the motion to strike as moot. Given the undisputed facts in the record, even if the Court views the so-called objectionable portions of Quinn's responses in the light most favorable to her, the Court would still grant Pauley qualified immunity and find that probable cause existed for Quinn's arrest. Of course, Pauley may choose to raise the same arguments addressed in his motion to strike as motions in limine prior to trial. The Court also notes that in ruling on every motion for summary judgment, it conducts its own examination of the parties' LR 56.1 submissions to determine whether they comply with the local rule.

## FACTS[2]

On November 5, 2002, Claudine Quinn and her husband drove to their local polling place, the Serena Hills School in Chicago Heights, Illinois in order to vote. (Def.'s LR 56.1(a)(3) ¶ 1.) At around 3:30 p.m., the Quinns arrived at the polling place and briefly waited in line before checking in. (*Id.* ¶¶ 2, 4.) Claudine Quinn was given an application for ballot which she signed and returned to the election judge. (*Id.* ¶¶ 7, 9.) The election judge examined Quinn's application for ballot and determined that her signature did not match the signature contained in the polling station's record book. (*Id.* ¶ 9.) This determination resulted in a dispute between Claudine Quinn and the election judge as to the validity of the signature on the application for ballot. (*Compare id.* ¶ 11, *with* Pl.'s LR 56.1(b)(3)(A) ¶ 11.) A second election judge, Carol Zurisk, then intervened and examined the signature. (Def.'s LR 56.1(a)(3) ¶ 12.) Although the two sides disagree over what was said and who was belligerent, what is clear is that the dispute as to the validity of the signature was not resolved. (*Compare id.* ¶¶ 12, 13, *with* Pl.'s LR 56.1(b)(3)(A) ¶¶ 12, 13.) In the commotion, the application for ballot was torn. (*Compare* Def.'s LR 56.1(a)(3) ¶ 13, *with* Pl.'s LR 56.1(b)(3)(A) ¶ 13.) Also, at some point during the dispute Zurisk called the police. (Pl.'s LR 56.1(b)(3)(B) ¶ 21.)

At approximately 4:30 p.m., Pauley received a dispatch from the Chicago Heights Police Department directing him to proceed to the Serena Hills polling place. (Def.'s LR 56.1(a)(3) ¶ 21.) Upon arriving on the scene, Zurisk informed Pauley that Quinn was attempting to leave the

---

[2]Unless otherwise noted, the following facts are either undisputed or deemed admitted due to a party's failure to comply with Local Rule 56.1.

polling place with a ballot.[3] (*Id.* ¶ 19.) Zurisk told Pauley that as an election judge she was legally obligated to account for all issued ballots. (*Id.* ¶ 19.) Pauley then conversed with Quinn, although the substance of the conversation is in dispute. (*Compare id.* ¶ 24, *with* Pl.'s LR 56.1(b)(3)(A) ¶ 24.) Following this conversation, Quinn exited the polling place. (Def.'s LR 56.1(a)(3) ¶ 24.) Pauley observed that Quinn had a piece of paper in her possession.[4] (*Compare* Def.'s LR 56.1(a)(3) ¶¶ 22, 24, *with* Pl.'s LR 56.1(b)(3)(A) ¶¶ 22, 24.) Upon exiting the polling place, Pauley placed Quinn under arrest. (Pl.'s LR 56.1(b)(3)(A) ¶ 27.)

## DISCUSSION

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In deciding a motion for summary judgment, the court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In support of his motion for summary judgment as to plaintiff's claim of false arrest (Count II), Pauley argues that he is entitled to qualified immunity and he had probable cause to

---

[3]This undisputed fact is deemed admitted because Quinn failed properly to deny Pauley's statement of fact under Local Rule 56.1(b)(3)(A). *See infra* Discussion.

[4]Pauley and Quinn give conflicting accounts of exactly what Quinn had in her possession when she exited the polling place. However, it is undisputed that Quinn possessed a piece of paper as she left. *See infra* Discussion.

3

arrest Quinn. The Court addresses each argument in turn.

"Government officials performing discretionary functions [are generally provided] with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). A two-step analysis is used to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see Sornberger v. City of Knoxville*, 434 F.3d 1006, 1013 (7th Cir. 2006). First, the court must ask whether the plaintiff has asserted a violation of a constitutional right. *Saucier*, 533 U.S. at 201. If such a violation is asserted, the next step is to ask whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Although qualified immunity is a defense to a § 1983 suit, the plaintiff bears the burden of meeting the two elements of the qualified immunity test. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999).

First, Quinn has asserted that she was arrested without probable cause. It is undisputed that Quinn had a constitutional right to be free from unlawful arrest. *See, e.g., Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see Sornberger*, 434 F.3d at 1013.

Moving to the second step of the analysis, Pauley is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest Quinn. *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Probable cause existed if 'at the moment the arrest was made . . . the facts and circumstances within [the arresting officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in

4

believing'" that Quinn had violated the law. *See id.* (ellipsis in original) (quoting *Beck*, 379 U.S. at 91).

Because probable cause turns on the information known to an officer at the time of arrest, "as long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officer[] ha[s] probable cause to place the alleged culprit under arrest, and [his] actions will be cloaked with qualified immunity if the arrestee is later found innocent." *Spiegel*, 196 F.3d at 723 (internal quotation omitted). The scope of qualified immunity was described by the Seventh Circuit in *Spiegel v. Cortese*:

> Because qualified immunity protects all "but the plainly incompetent or those who knowingly violate the law," a law enforcement officer will be immune to claims based on an arrest without probable cause unless "it is obvious that no reasonably competent officer" would have believed that there was probable cause to arrest."

196 F.3d at 723 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Thus, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter*, 502 U.S. at 227 (quoting *Anderson v. Creighton*, 483 U.S. at 641).

In this case, a prudent officer in Pauley's position could have reasonably believed that probable cause existed to arrest Quinn in light of the information Pauley possessed and he is therefore entitled to qualified immunity. In his statement of material facts, Pauley states that upon arriving at the polling place he was told by Zurisk that Quinn was attempting to leave the polling place with a ballot. (Def.'s LR 56.1(a)(3) ¶¶ 19, 20, 23.) Quinn purports to deny these facts in her response to Pauley's statement of material facts. (Pl.'s LR 56.1(b)(3)(A) ¶¶ 19, 20, 23.) However, the substance of Quinn's denials fails to meet the standard of Local Rule

5

56.1(b)(3)(A)[5] because the parts of Quinn's deposition cited in the responses, and the responses themselves, do not support her denial that Zurisk made these statements to Pauley. (*Id.*)

In her denials, Quinn only states that she "was never given a ballot" and "did not have a ballot in her hand when she left the polling place." (*Id.*) Also, Quinn's deposition supports the assertion that Quinn was not given a ballot, but it does not support a denial that Zurisk made these statements to Pauley. (Pl.'s Dep. at 89, 104, 128.) Moreover, Quinn testified that she overheard the conversation between Pauley and Zurisk, but as to the substance of the conversation Quinn says only that, "He just basically listened to what she was telling him . . . ." (*Id.* at 103.) Therefore, because Quinn does not properly support her denials as required by Local Rule 56.1(b)(3)(A), Pauley's statements of fact regarding what Zurisk told him are deemed admitted.

Additionally, Pauley states that he saw Quinn fold up what he believed to be a ballot and put it in her pocket before leaving the polling place. (Def.'s LR 56.1(a)(3) ¶ 22.) Quinn denies this claim by stating that she was never given a ballot and did not have a ballot in her hand when she left the polling place. (Pl.'s LR 56.1(b)(3)(A) ¶ 22.) As noted above, Quinn properly supports her statement that she did not have a ballot. (*Id.* (citing Pl.'s Dep. at 89, 104, 128).) However, the cited portions of the deposition also reveal that Quinn had a piece of paper in her hand when she left the polling place.[6] (Pl.'s Dep. at 104.) Further, Quinn does not deny that

---

[5] Local Rule 56.1(b)(3)(A) requires "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon . . . ."

[6] *Q:* Did you have a ballot with you? *A:* I had something in my hand. It wasn't a ballot. *Q:* What was in your hand? *A:* The paper that was torn. (Pl.'s Dep. at 104.)

Pauley observed her with a piece of paper, only that she did not have a ballot. (Pl.'s LR 56.1(b)(3)(A) ¶ 22.) Thus, it is undisputed that Quinn left the polling place with a piece of paper in her possession, and it is deemed admitted that Pauley observed her leaving with this piece of paper that he believed to be a ballot.

Also, Quinn focuses on the fact that, while she did have a piece of paper, she did not have a *ballot* in her hand when she left the polling station. (Pl.'s LR 56.1(b)(3)(A) ¶¶ 18-20, 22-24.) However, the Illinois statute that prohibits removal of election materials covers more than just ballots and encompasses "any record, register of voters, affidavit, return or statement of votes, certificate, tally sheet, ballot, or any other document or computer program which . . . is used or to be preserved for use in connection with any election."[7] 10 ILL. COMP. STAT. 5/29-6 (2004). Thus, the torn document depicted in Exhibit A of Pauley's Local Rule 56.1(a)(3) statement, presumably the paper Quinn possessed when she left the polling station, would fall under the scope of this statute. (Def.'s LR 56.1(a)(3) Ex. A.)

As noted above, if an officer receives information from a reasonably credible witness that a crime is about to be committed, the officer has probable cause to arrest and will be protected by qualified immunity. *Spiegel*, 196 F.3d at 723. Here, Pauley was told by Zurisk, an election judge, that Quinn was about to remove a ballot from a polling place. (Def.'s LR 56.1(a)(3) ¶¶

---

[7]The statute ("§ 29-6") reads in relevant part:
>Any person who knowingly destroys, mutilates, defaces, falsifies, forges, conceals or removes any record, register of voters, affidavit, return or statement of votes, certificate, tally sheet, ballot, or any other document or computer program which (a) is used or to be preserved for use in connection with registration, or (b) is used or to be preserved for use in connection with any election pursuant to this Code, except as permitted by provisions of this Code, shall be guilty of a Class 4 felony . . . .

7

19, 20, 23). An election judge supervising a polling station would certainly appear to be a reasonably credible witness, especially given an election judge's role in supervising the election process, such that Pauley would have no reason to doubt her sincerity. Thus, Pauley is entitled to qualified immunity on the basis of Zurisk's statements alone.

In *Spiegel*, where an officer based an arrest on the putative victim's accusations and the officer's own observations of a bruise on the victim's body, the court held that the officer had probable cause to arrest an individual for battery, and was thus shielded by qualified immunity. *Spiegel*, 196 F.3d at 723-24. The *Spiegel* court stated that the officer's belief that the victim had been battered was reasonable, even though the officer was aware of an ongoing dispute between the victim and the accused. *Id.*

As in *Spiegel*, Pauley based his arrest on the statements of a witness. However, Zurisk is an even more credible witness than the victim in *Spiegel*, who had a running dispute with the arrestee, *id.* at 720-21, because Pauley had no reason to believe that Zurisk was anything other than a neutral election judge supervising the voting process. (Def.'s LR 56.1(a)(3) ¶ 12.) Also as in *Spiegel*, Pauley relied on his own observations that also supported the statements of the witness. Where the officer in *Spiegel* observed the victim's bruise nearly a month after the alleged battery, 196 F.3d at 720-21, Pauley observed Quinn exit the polling place with a piece of paper at the scene of the incident. (Def.'s LR 56.1(a)(3) ¶¶ 22, 24.)

In sum, Pauley was told by a reasonably credible witness that Quinn was about to leave the polling place with a ballot. (Def.'s LR 56.1(a)(3) ¶¶ 19, 20, 23.) Pauley also observed Quinn leaving the polling place with a piece of paper. (*Id.* ¶¶ 22, 24.) For purposes of determining whether Pauley should be afforded qualified immunity, the issue is not whether Quinn actually had a ballot but whether Pauley reasonably believed that she had taken a ballot

from the polling place. Probable cause existed if these facts and circumstances within Pauley's knowledge were sufficient to warrant a prudent man in believing that Quinn was violating the law when she exited the polling place. A reasonable officer confronted with this situation could have believed that probable cause existed to arrest Quinn. Thus, it would not be so clear or obvious to a reasonable officer confronted with this situation that his conduct in making an arrest was unlawful. Therefore, the Court holds that Pauley must be afforded qualified immunity.

Even if the Court were to reach the merits of the claim, Pauley's actions were justified because the undisputed facts show that he had probable cause to arrest Quinn. "Probable cause existed if 'at the moment the arrest was made . . . the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing'" that the plaintiff had violated the law. *Hunter*, 502 U.S. at 228 (ellipsis in original) (quoting *Beck*, 379 U.S. at 91). Thus, "[w]hen an officer has received his information from some person--normally the putative victim or an eye witness--who it seems reasonable to believe is telling the truth, he has probable cause." *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986) (internal quotation and citation omitted); *see Tangwall v. Stuckey*, 135 F.3d 510, 519 (7th Cir. 1998). "Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters." *Gramenos*, 797 F.2d at 439. Thus, an officer does not "risk[] his career and his fortune by believing an apparently sober eyewitness to a crime." *Id.*

Under the circumstances, Pauley had probable cause to arrest Quinn. As noted above, Pauley received information from Zurisk, a reasonably credible eyewitness, that Quinn was leaving the polling place with a ballot. (Def.'s LR 56.1(a)(3) ¶¶ 19, 20, 23.) This eyewitness information, in and of itself, would warrant a prudent officer's belief that Quinn was committing

9

a crime. Pauley's observation of Quinn's leaving the polling place with what he believed to be a ballot further establishes that he had reasonable belief that there was probable cause to arrest her.

In *Gramenos v. Jewel Cos.*, probable cause existed to arrest an individual for shoplifting where the only information possessed by the arresting officer was the eyewitness account of a store security guard. 797 F.2d at 439. Likewise, Pauley had probable cause to arrest Quinn even if the only information he possessed were Zurisk's statements that Quinn was attempting to leave the polling place with a ballot.

Accordingly, the Court grants Pauley's motion for summary judgment. Based on the undisputed facts before the Court, Pauley is entitled to qualified immunity as to plaintiff's claim of false arrest. Further, even if the Court were to reach the merits of the claim, viewing the evidence in the light most favorable to plaintiff, no reasonable jury could conclude Pauley lacked probable cause for the arrest.

## CONCLUSION

For the foregoing reasons, the Court grants Pauley's motion for summary judgment as to Quinn's claim of false arrest (Count II) [doc. no. 22-1]. The following remains for trial: (1) Voting Rights Act claim (Count I), (2) excessive force claim (Count III); and (3) state malicious prosecution claim (Count IV). Pauley's motion to strike portions of Quinn's response to his motion for summary judgment is denied as moot [doc. nos. 35-1, 37-1, 39-1].

**SO ORDERED.**  ENTER: March 21, 2006

_____
**RONALD A. GUZMAN**
U.S. Judge

10